**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| MICHAEL WILLIAMS, Individually and For Others Similarly Situated<br><br>v.<br><br>INTERNATIONAL DIRECTIONAL DRILLING INC. | **Case No.** _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Michael Williams (Williams) brings this collective action lawsuit to recover unpaid wages and other damages from International Directional Drilling Inc. (IDD).

2. IDD employed Williams as one of its Day Rate Employees (defined below).

3. Williams and the other Day Rate Employees regularly work more than 40 hours a week.

4. But IDD does not pay them overtime for all hours worked in excess of 40 a week.

5. Instead, IDD pays Williams and its other Day Rate Employees a fixed daily sum for each day worked, regardless of the total number of hours they work in a workweek (IDD's "day rate pay scheme").

6. IDD pays all its Day Rate Employees according to this day rate pay scheme regardless of any allegedly individualized factors.

7. IDD thus misclassified Williams and the other Day Rate Employees as exempt from overtime.

8. But IDD never paid Williams and the other Day Rate Employees on a "salary basis" as required for any relevant overtime exemption.

1

9.      IDD's day rate pay scheme violates the Fair Labor Standards Act (FLSA) by depriving Williams and the other Day Rate Employees of overtime wages when they work more than 40 hours in a week.

## JURISDICTION & VENUE

10.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11.     This Court has general personal jurisdiction over IDD because it is a Florida corporation.

12.     Venue is proper because IDD maintains its principal place of business in Coconut Creek, Florida, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13.     IDD employed Williams from approximately August 2024 through November 2024 as a directional drilling supervisor.

14.     Throughout his employment, IDD paid Williams according to its day rate pay scheme.

15.     IDD never paid him overtime.

16.     Williams' written consent is attached as **Exhibit 1**.

17.     Williams brings this collective action on behalf of himself and all other similarly situated Day Rate Employees who IDD paid according to its day rate pay scheme.

18.     The putative collective of similarly situated employees is defined as:

> **All employees who IDD paid according to its day rate pay scheme at any time during the past 3 years through final resolution of this action (the "Day Rate Employees").**

19.     IDD is a Florida corporation headquartered in Coconut Creek, Florida.

20.     IDD can be served through its registered agent: **Tripp Scott, P.A., 1110 S.E. Sixth Street, 1500, Fort Lauderdale, Florida 33301**.

2

**FLSA COVERAGE**

21.    At all relevant times, IDD was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

22.    At all relevant times, IDD was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

23.    At all relevant times, IDD was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

24.    At all relevant times, IDD has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

25.    At all relevant times, the Day Rate Employees were IDD's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

26.    At all relevant times, the Day Rate Employees were engaged in commerce or in the production of goods for commerce.

**FACTS**

27.    IDD touts that "[i]nstalling utilities is [its] specialty and by utilizing directional boring methods [it has] proven to save [their] customers time and money while preventing unnecessary disruption."[1]

28.    To meet its business objectives, IDD hires workers, like Williams and the other Day Rate Employees to carry out the installation of piping and fiber optics through directional boring.

---

[1] https://www.iddcorporation.com/en/home/ (last visited February 18, 2025).

29. Williams and the other Day Rate Employees regularly work more than 40 hours a workweek.

30. But IDD does not pay Williams and the other Day Rate Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they work in excess of 40 a workweek.

31. Instead, IDD pays Williams and its other Day Rate Employees according to its day rate pay scheme.

32. While exact job titles and locations may differ, Williams and the other Day Rate Employees are subjected to the same or similar pay practices, IDD's day rate pay scheme, for similar work.

33. For example, as a directional drilling supervisor, Williams' job duties included job duties included preparing the necessary directional drilling equipment, lining out drilling pathways for each job, operating directional drilling equipment to install underground fiber optic cables, and ensuring each job is performed in accordance with the policies, procedures, and expectations IDD imposes.

34. Williams typically worked approximately 10 to 12 hours a day for 5 to 6 days a week (50 to 72 hours a workweek).

35. IDD set Williams' schedule and Williams worked as directed by IDD.

36. Despite knowing Williams regularly worked more than 40 hours a workweek, IDD did not pay him at least 1.5 times his regular rate of pay for the hours he worked in excess of 40 each workweek.

37. Instead, IDD paid Williams according to its day rate pay scheme.

38. That is, IDD paid Williams only a fixed daily sum of approximately $400 a workday, regardless of the actual number of hours he worked in a workday or workweek.

39.     Indeed, Williams' offer letter states that IDD would pay him "$400 per day":

**Offer Letter**

In consideration of your services as Supervisor you will be compensated $400 per day payable bi-weekly, in accordance with the standard payroll practices of IDD and subject to all withholdings and deductions as required by law.

40.     IDD did not provide Williams any weekly guarantee.

41.     For example, during the biweekly pay period ending September 8, 2024, Williams worked and was paid for 8 days:

| Total Gross Pay | Hours | Rate | Current Amt | Ytd Amt |
|---|---|---|---|---|
| Salary | 0.00 | | 3,200.00 | 7,200.00 |
| | **0.00** | | **3,200.00** | **7,200.00** |

| Taxes | Status | Taxable | Current Amt | Ytd Amt |
|---|---|---|---|---|
| Federal Income Tax | S1-0 | 3,200.00 | 390.19 | 956.38 |
| OASDI | | 3,200.00 | 198.40 | 446.40 |
| Medicare | | 3,200.00 | 46.40 | 104.40 |
| Medicare - Additional | | 3,200.00 | 0.00 | 0.00 |
| Florida SITW | | 3,200.00 | 0.00 | 0.00 |
| | | | **634.99** | **1,507.18** |

42.     And during the biweekly pay period ending October 6, 2024, Williams worked and was paid for 9 days:

**Earnings Summary**

| Total Gross Pay | Hours | Rate | Current Amt | Ytd Amt |
|---|---|---|---|---|
| Salary | 0.00 | | 3,600.00 | 14,800.00 |
| | **0.00** | | **3,600.00** | **14,800.00** |

| Taxes | Status | Taxable | Current Amt | Ytd Amt |
|---|---|---|---|---|
| Federal Income Tax | S1-0 | 3,600.00 | 478.19 | 2,000.76 |
| OASDI | | 3,600.00 | 223.20 | 917.60 |
| Medicare | | 3,600.00 | 52.20 | 214.60 |
| Medicare - Additional | | 3,600.00 | 0.00 | 0.00 |
| Florida SITW | | 3,600.00 | 0.00 | 0.00 |
| | | | **753.59** | **3,132.96** |

43. IDD never paid Williams overtime wages.

44. Thus, IDD failed to pay Williams at a rate of at least 1.5 times his regular rate of pay—based on all remuneration—for all hours he worked in excess of 40 each workweek.

45. IDD pays the other Day Rate Employees according to the same or similar day rate pay scheme pay scheme it imposed on Williams.

46. That is, IDD pays them a fixed daily sum for each day they work and fails to pay them overtime wages for all the hours they work in excess of 40 a workweek.

47. Like Williams, the other Day Rate Employees typically work 10 to 12 hours a day for 5 to 6 days a week (50 to 72 hours a workweek).

48. And like Williams, the other Day Rate Employees work in accordance with the schedule set by IDD.

49. Despite knowing the other Day Rate Employees regularly work overtime hours, like Williams, IDD does not pay them at least 1.5 times their regular rates of pay for all hours they work in excess of 40 a workweek.

50. And IDD has never paid Williams and the other Day Rate Employees on a "salary basis."

51. IDD does not pay Williams and the other Day Rate Employees a guaranteed sum on a weekly or less frequent basis that is not subject to reduction based on the quality or quantity of work.

52. Thus, IDD has never paid Williams and the other Day Rate Employees on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

53. Because IDD uniformly fails to pay Williams and the other Day Rate Employees on a "salary basis," they are all non-exempt employees entitled to overtime.

54. Thus, IDD does not pay Williams and its other Day Rate Employees overtime at the required rates when they work more than 40 hours a workweek, in willful violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

55. Like Williams, the other Day Rate Employees are victimized by IDD's day rate pay scheme.

56. Other Day Rate Employees worked with Williams and indicated they were paid in the same manner, performed similar work, and were subject to IDD's same day rate pay scheme.

57. Based on his experience with IDD, Williams is aware IDD's day rate pay scheme was imposed on other Day Rate Employees.

58. The Day Rate Employees are similarly situated in the most relevant respects.

59. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime pay.

60. Any relevant exemption defense(s) would require IDD to pay the Day Rate Employees on a "salary basis."

61. Because IDD's day rate pay scheme fails the "salary basis" test, the specific job duties performed by the Day Rate Employees are largely irrelevant.

62. The relevant inquiries are whether the Day Rate Employees were paid according to IDD's day rate pay scheme and whether that pay scheme satisfied the "salary basis" test.

63. Therefore, the specific job titles or precise job locations of the various Day Rate Employees do not prevent collective treatment.

64. Rather, IDD's day rate pay scheme renders Williams and the other Day Rate Employees similarly situated for the purpose of determining their right to overtime pay.

65. IDD's records reflect the number of days and/or hours the Day Rate Employees worked each workweek.

7

66.     IDD's records also show how and what it paid the Day Rate Employees.

67.     The back wages owed to Williams and the other Day Rate Employees can therefore be calculated using the same formula applied to the same records.

68.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to IDD's records, and there is no detraction from the common nucleus of liability facts.

69.     Therefore, the issue of damages does not preclude collective treatment.

70.     Williams' experiences are therefore typical of the experiences of the other Day Rate Employees.

71.     Williams has no interests contrary to, or in conflict with, the other Day Rate Employees that would prevent collective treatment.

72.     Like each Day Rate Employee, Williams has an interest in obtaining the unpaid wages owed under federal law.

73.     Williams and his counsel will fairly and adequately protect the interests of the other Day Rate Employees.

74.     Williams retained counsel with significant experience in handling complex collective action litigation.

75.     A collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

76.     Absent this collective action, many Day Rate Employees will not obtain redress for their injuries, and IDD will reap the unjust benefits of violating the FLSA.

77.     Further, even if some Day Rate Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

8

78. Indeed, the multiplicity of actions would create a hardship for the Day Rate Employees, the Court, and IDD.

79. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Day Rate Employees' claims.

80. IDD's day rate pay scheme deprived Williams and the other Day Rate Employees of the overtime wages they are owed under federal law.

81. There are many similarly situated Day Rate Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

82. The Day Rate Employees are known to IDD, are readily identifiable, and can be located through IDD's business and personnel records.

### IDD's Violations Were Willful

83. IDD knew it was subject to the FLSA's overtime provisions.

84. IDD knew the FLSA required it to pay non-exempt employees, including the Day Rate Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 a workweek.

85. IDD knew each Day Rate Employee worked more than 40 hours in at least one workweek during the relevant period.

86. IDD knew it paid the Day Rate Employees under its day rate pay scheme.

87. IDD knew it did not pay the Day Rate Employees on a "salary basis."

88. IDD knew it did not pay the Day Rate Employees any guaranteed sum that was not subject to reduction based on the quantity or quality of work.

89. Thus, IDD knew its day rate pay scheme did not satisfy the "salary basis" test.

90. IDD knew it needed to pass the "salary basis" test to qualify for any exemptions it could have claimed with respect to the Day Rate Employees.

91. IDD knew, or showed reckless disregard for whether, its conduct described in this Complaint violated the FLSA.

92. Indeed, IDD has been sued for failing to pay required overtime wages, in violation of the FLSA, under the same or similar day rate pay scheme alleged here. *See*, *Montenegro v. International Directional Drilling Inc., a/k/a IDD Corporation*, 0:24-cv-62065 (S.D. Fla.).

93. IDD knowingly, willfully, and/or in reckless disregard carried out its illegal day rate pay scheme that systematically deprived the Day Rate Employees of overtime pay in violation of the FLSA.

**CAUSE OF ACTION**

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**

94. Williams brings his FLSA claims as a collective action on behalf of himself and the other Day Rate Employees.

95. IDD violated, and is violating, the FLSA by employing non-exempt employees, Williams and the other Day Rate Employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

96. IDD's unlawful conduct harmed Williams and the other Day Rate Employees by depriving them of the overtime wages they are owed.

97. Accordingly, IDD owes Williams and the other Day Rate Employees the difference between the overtime wages actually paid and the required overtime wages.

98.     Because IDD knew or showed reckless disregard for whether its day rate pay scheme violated the FLSA, IDD owes Williams and the other Day Rate Employees these wages for at least the past 3 years.

99.     IDD is also liable to Williams and the other Day Rate Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

100.    Finally, Williams and the other Day Rate Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

101.    Williams demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Williams, individually and on behalf of the other Day Rate Employees, seeks the following relief:

a.      An Order designating this lawsuit as a collective action and authorizing notice to the Day Rate Employees allowing them to join this action by filing a written notice of consent;

b.      An Order finding IDD liable to Williams and the other Day Rate Employees for unpaid wages owed under the FLSA, plus liquidated damages in amount equal to their unpaid wages;

c.      A Judgment against IDD awarding Williams and the other Day Rate Employees all their unpaid wages, liquidated damages, and any other penalties available under the FLSA;

d.      An Order awarding attorneys' fees, costs, and expenses;

e.      Pre- and post-judgment interest at the highest applicable rates; and

f.      Such other and further relief as may be necessary and appropriate.

Dated: February 25, 2025

Respectfully submitted,

**MORGAN & MORGAN, PA**

By: */s/ C. Ryan Morgan*
      C. Ryan Morgan
      FL Bar No. 15527
20 N. Orange Ave., 15th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Tel: (407) 420-1414
Fax: (407) 245-3401
rmorgan@forthepeople.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:    (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR WILLIAMS
AND THE DAY RATE EMPLOYEES**

12